**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FATIMAH ROSARIO,<br><br>           Plaintiff,<br><br>         v.<br><br>PENSKE TRUCK RENTAL; JOHN DOES 1-10 and ABC COMPANY 1-10 (fictitious names for persons or entities whose present roles and identities are unknown),<br><br>           Defendants. | Civil Action No. _____<br><br><br>**NOTICE OF REMOVAL & LOCAL CIVIL RULE 11.2 CERTIFICATION** |

**TO:**   CHIEF JUDGE AND JUDGES OF
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**ON NOTICE TO:**

Jamison M. Mark, Esq.
Taylor Ruggieri, Esq.
Edward Monaghan, Esq.
Mark Lavigne, LLC
675 Morris Avenue, Suite 300
Springfield, New Jersey 07081
*Attorneys for Plaintiff*

Michelle M. Smith, Esq., Clerk
Richard J. Hughes Justice Complex
Superior Court Clerk's Office
25 Market Street, 6th Floor NW
Trenton, New Jersey 08625

Clerk, Superior Court of New Jersey, Middlesex County
56 Paterson Street
New Brunswick, New Jersey 08903

**HONORABLE JUDGES:**

Pursuant to the provisions of 28 U.S.C. §§ 1331, 1332, 1367, 1441 and 1446, Defendant Penske Truck Leasing Co., L.P., incorrectly pleaded as "Penske Truck Rental" (hereafter "Defendant" or "Penske") files this Notice of Removal, removing this case from the Superior Court of New Jersey, Law Division, Middlesex County, to the United States District Court for the District of New Jersey. In support of this Notice, Penske states as follows:

<u>**INTRODUCTION**</u>

1.      On December 8, 2025, Plaintiff Fatimah Rosario ("Plaintiff") commenced this action by filing a Complaint (the "Complaint") in the Superior Court of New Jersey, Middlesex County, bearing Case No. MID-L-008608-25, against Penske, John Does 1-10 and ABC Company 1-10. This case is entitled *Fatimah Rosario v. Penske Truck Rental; John Does 1-10; and ABC Company 1-10 (fictitious names for persons or entities whose present roles and identities are unknown)*. *See* Complaint at Exhibit A.

2.      The Complaint arises out of Plaintiff employment with Penske and asserts the following claims: (1) retaliation under the New Jersey Conscientious Employee Protection Act ("CEPA") (Count I); (2) common law wrongful discharge (Count II); (3) disability discrimination under the New Jersey Law Against Discrimination ("NJLAD") (Count III); (4) failure to accommodate disability under NJLAD (Count IV); (5) perceived disability discrimination under NJLAD (Count V); (6) unlawful interference with rights protected under the Family Medical Leave Act ("FMLA") (Count VI); (7) retaliation under FMLA (Count VII); and (8) tortious interference (Count VIII). *See* Exhibit A.

3.      Penske is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at 23675 Morgantown Road, Reading, Pennsylvania

19067.

4.      Plaintiff served Penske with a copy of the Summons and Complaint on December 17, 2025.

5.      This Notice of Removal is timely because it is filed within the thirty-day period prescribed by 28 U.S.C. § 1446(b).

6.      Venue of this civil action is proper in this Court pursuant to 28 U.S.C. § 1441(a), (b) and (c).

7.      Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders included in the State Court file are attached to this Notice as Exhibit A, consisting of (1) the Complaint filed by Plaintiff, dated December 8, 2025; and (2) the Track Assignment Notice for this matter.

8.      No previous application for removal has been made.

**REMOVAL IS APPROPRIATE**
**BASED UPON DIVERSITY OF CITIZENSHIP**
**28 U.S.C. § 1332**

9.      This is a civil action that falls under the Court's original jurisdiction pursuant to 28 U.S.C. § 1332(a) and is one that may be removed to this Court based on diversity of citizenship under 28 U.S.C. §§ 1441(b) and 1446.

10.      Plaintiff claims to be a citizen and resident of New Jersey. *See* Exhibit A, Complaint at ¶ 1.

11.      Penske, a Delaware limited partnership, has its principal place of business in Reading, Pennsylvania.

12.      This Court has jurisdiction over this matter because complete diversity exists between the parties. *See* 28 U.S.C. § 1332(a)(1) and 1441(b).

## AMOUNT IN CONTROVERSY IS SATISFIED

13.    The amount in controversy in this case exceeds $75,000.00, exclusive of interest and cost, under the "reasonable probability" standard recognized by this Court. Section 1446(c)(2)(B) instructs that "removal . . . is proper on the basis of an amount of controversy asserted" by the defendant "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. The preponderance of the evidence standard is satisfied by "proof to a reasonable probability." *Roundtree v. Primeflight Aviation Servs., Inc.*, No. 16-9609, 2017 WL 3207439, at *2 (D.N.J. 2017).

14.    This Court first looks to the complaint to assess the damages demanded by the plaintiff. *See Russ v. Unum Life Ins. Co.*, 442 F. Supp. 2d 193, 197 (D.N.J. 2006). When the complaint does not allege a specific amount of damages, the court should conduct an independent appraisal of the value of the claim by looking at the notice for removal and any other relevant evidence. *See Penn v. Wal-Mart Stores, Inc.*, 116 F. Supp. 2d 557, 561–62 (D.N.J. 2000). The amount in controversy is determined "not . . . by the low end of an open-ended claim, but rather by a reasonable reading of the value of rights being litigated." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (citations omitted).

15.    It is apparent from the face of the Complaint that Plaintiff seeks recovery of an amount beyond $75,000.00, exclusive of costs and interest. Plaintiff seeks compensatory damages, liquidated damages, and reasonable costs and attorneys' fees. *See* Exhibit A, WHEREFORE Clauses to Counts I – IX.

16.    Plaintiff also seeks punitive damages. *See* Exhibit A, WHEREFORE Clauses to Counts I – VI.

17.    This Court has recognized that the amount in controversy exceeded $75,000.00 in cases with similar employment allegations to those made here. *See, e.g., Curro v. HD Supply, Inc.*, 2020 WL 3496955, *4 (D.N.J. Jun. 29, 2020) (amount in controversy met by plaintiff simply alleging she was seeking "front pay and back pay, as well as other compensation and benefits. . .attorneys' fees . . . and punitive damages."); *Sussman v. Capital One, N.A.*, 2014 WL 5437079, *4 (D.N.J. Oct. 24, 2014) ("The relevant time period for calculating an award of back pay begins with the date of the alleged wrongful termination and ends at the time of trial. Similarly, when calculating the front pay award, the jury must consider the expected future damages caused by a defendant's wrongful conduct from the date of judgment to retirement."); *Raspa v. Home Depot*, 533 F. Supp. 2d 514, 522 (D.N.J. 2007) (holding that claims for punitive damages met the amount in controversy requirement because plaintiffs, under New Jersey law, can collect up to five times their compensatory damages).

18.    Penske need not confirm through discovery that the jurisdictional amount is satisfied. Indeed, the "jurisdictional analysis is performed on what is <u>alleged</u> in the Complaint, not what one may ultimately recover." *Allen v. Bloomingdale's Inc.*, 2016 WL 4579975, at *2 (D.N.J. Jul. 19, 2016) (emphasis in original). Thus, courts often extrapolate the jurisdictional amount from plaintiff's general allegations. *See, e.g., Curro*, 2020 WL 3496955, at 4 (holding that the amount in controversy was satisfied where plaintiff sought front pay, back pay, compensation and benefits, emotional distress damages and attorneys' fees). Because the Complaint sets forth general financial loss allegations by Plaintiff in addition to a claim for punitive damages, there is a reasonable probability that the amount in controversy is satisfied.

19.    As demonstrated above, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00, and the action is between citizens of different states.

## REMOVAL IS FURTHER APPROPRIATE
## BASED UPON FEDERAL QUESTION
## 28 U.S.C. § 1331

20.     This Court also has original jurisdiction over Plaintiff's federal claim under 28 U.S.C. §1331 and Plaintiff's state law claims under 28 U.S.C. §1367.

21.     As noted above, Plaintiff asserts claims under the FMLA, CEPA, NJLAD, and New Jersey common law.  *See* Exhibit A, Counts I through VIII.

22.     Plaintiff's FMLA claims are claims over which this Court has federal question jurisdiction under 28 U.S.C. §1331 and which could have been filed in this Court.  Thus, removal is proper pursuant to 28 U.S.C. §1441.

23.     The Court has supplemental jurisdiction over Plaintiff's claims under New Jersey law pursuant to 28 U.S.C. §1367 because those claims are so related to her federal causes of action that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. §1367(a).  The operative facts underlying Plaintiff's federal claims and state law claims are the same.  Accordingly, Plaintiff's state law claims may be removed pursuant to 28 U.S.C. §1441.

## COPIES OF ALL PLEADINGS

24.     All pleadings, orders and other papers or exhibits that have been filed in the State Court, including but not limited to the Summons and Complaint, are attached hereto as Exhibit A.

## FILING OF REMOVAL PAPERS

25.     Pursuant to 28 U.S.C. § 1446(d), Penske is filing a written Notice of the Filing of Removal with the Clerk of the Superior Court of New Jersey Law Division, Middlesex County, along with a copy of the Notice of Removal.  These papers are being served upon Plaintiff's

counsel as required by 28 U.S.C. § 1446(d).

26.    If any questions arise concerning the propriety of this removal, Penske requests that it be allowed to file a brief supporting removal and be heard in oral argument.

**WHEREFORE,** Penske gives notice that the matter captioned *Fatimah Rosario v. Penske Truck Rental; John Does 1-10; and ABC Company 1-10 (fictitious names for persons or entities whose present roles and identities are unknown)*, filed in the Superior Court of the State of New Jersey, Law Division, Middlesex County, Docket No. MID-L-008608-25, is removed to the United States District Court for the District of New Jersey, and requests that this Court retain jurisdiction for all further proceedings.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
*Attorneys for Defendant*
*Penske Truck Leasing Co. L.P.*

By: */s/ Leslie A. Lajewski*
    Leslie A. Lajewski, Esq.
    10 Madison Avenue, Suite 400
    Morristown, New Jersey 07960
    Telephone: (973) 656-1600
    Facsimile: (973) 656-1611
    leslie.lajewski@ogletree.com

Date:   January  12, 2026

## <u>LOCAL CIVIL RULE 11.2 STATEMENT</u>

Pursuant to Local Rule 11.2, the undersigned counsel, on behalf of Defendant Penske Truck Leasing Co., L.P., certifies that the matter in controversy in the above referenced matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
*Defendant Penske Truck Leasing Co., L.P.*

By: /s/ *Leslie A. Lajewski*
          Leslie A. Lajewski, Esq.

Date:   January 12, 2026

# EXHIBIT A

*MARK | LAVIGNE, LLC*

Jamison M. Mark, Esq. (042392000)
jmark@newjerseyattorneys.com
Taylor Ruggieri, Esq. (ID No. 243042019)
truggieri@newjerseyattorneys.com
Edward Monaghan, Esq. (ID No. 375822021)
emonaghan@newjerseyattorneys.com
675 Morris Avenue, Suite 300
Springfield, New Jersey 07081
T: (973)-845-6606 (Main)
Attorneys for Plaintiff Fatima Rosario

| | |
|---|---|
| **FATIMAH ROSARIO**,<br><br>Plaintiff,<br><br>v.<br><br>**PENSKE TRUCK RENTAL; JOHN DOES 1-10 and ABC COMPANY 1-10** (fictitious names for persons or entities whose present roles and identities are unknown),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br><br>DOCKET No. MID-L-<br><br><u>Civil Action</u><br><br>**COMPLAINT, JURY DEMAND, DESIGNATION OF TRIAL COUNSEL, CERTIFICATIONS, PRESERVATION NOTICE, DISCOVERY & DEPOSITION NOTICES** |

Plaintiff, Fatimah Rosario by and through her attorneys, Mark | Lavigne, LLC. as and for his complaints and claims against Defendants, hereby states:

## PARTIES

1.     Ms. **Fatimah Rosario** was an employee of Penske Truck Rental, holding the title of Customer Service Coordinator**.** Ms. Rosario is a Citizen of New Jersey, residing in Middlesex County, New Jersey, and is entitled to all the rights and privileges secured by the Constitution of the State of New Jersey.

2.     Defendant **Penske Truck Rental** during all times relevant was Ms. Rosario's employer, and a business located in New Jersey and operates at 1540 Lower Rode, Linden, NJ 07036.

3.      Defendant **Jane and John Doe 1-10, and ABC Corp 1-10,** who at all times material to this Complaint, individual defendants and actors of Penske Truck Rental, administrators, human resources, management, and upper management that were involved in the discrimination against Ms. Rosario, or failed to take action to prevent discrimination, failed to adequately train, monitor or enforce any policy that existed, and affirmatively acted, as well as unknown employees who acted under color of law on behalf of the Defendant Penske Truck Rental.

## VENUE

4.      Venue is properly laid in Middlesex County pursuant to R. 4:3-2(a), because Ms. Rosario is a citizen of New Jersey and resides in Middlesex County, New Jersey.

## PRELIMINARY STATEMENT

5.      Ms. Rosario alleges that Defendant retaliated against her when she disclosed, objected to, complained and notified her employer of unlawful acts committed by **Penske Truck Rental**, to wit: The company was falsifying documents in violation of the New Jersey Conscientious Employee Protection Act (NJ CEPA), N.J.S.A. §34:19, et al, but also failed to accommodate and did terminate Ms. Rosario's employment due to her disability in violation of N.J.S.A. §10:5-1, et seq.

## FACTS COMMON TO ALL COUNTS

6.      At all relevant times, Ms. Fatima Rosario ("Plaintiff" or "Ms. Rosario") was employed by Penske Truck Rental as a fulltime Customer Service Coordinator on April 28, 2024, until her termination from the company on February 18, 2025.

7.     At all relevant times, Defendant Penske Truck Rental (hereinafter "Penske") is a business located in Linden, New Jersey.

## NEW JERSEY CONSCIENTIOUS EMPLOYEE PROTECTION ACT

8.     During Ms. Rosario's employment with Penske, Supervisor Chris Pazella would make demands upon the Penske employees, to commit illegal acts.

9.     For example, Mr. Pazella would instruct his subordinates, including Ms. Rosario, to falsely assign technicians to vehicles that were not present in the truck yard, and then to fraudulently put in time for work on said vehicles when no work was actually done on them.

10.     Moreover, Mr. Pazella would instruct Ms. Rosario how to fill out paperwork in such instances, and she did as instructed.

11.     Mr. Pazella continued to instruct his subordinates, including Ms. Rosario, to falsely assign technicians to vehicles that were not present in the truck yard, and then to fraudulently put in time for work on said vehicles when no work was actually done on them.

12.     Mr. Pazella also instructed Ms. Rosario to "put time" on the trucks to evade "oil sampling," which Ms. Rosario now understood was not only a violation of company policy, but was illegal.

13.     When Ms. Rosario questioned why her managers requested her to fill out paperwork for employees who were not showing, and she believed they were falsifying paperwork and reporting people working when they were not, she was told that "doing it this way" for the truck assignments was normal, this is how the managers recorded it, and was acceptable reporting,

14.     Despite Mr. Pazella specifically instructing her to do so, Ms. Rosario was accused of assigning drivers to trucks that were not physically present at the location.

15.     Despite following orders, Ms. Rosario was brought in by Penske's Branch Manager Baron Rodriguez and Penske Human Resources Jasmin Abdel-Aziz and was subjected to an inquiry due to the way in which she, and others, were filing out the paperwork.

16.     Mr. Rodriguez and Ms. Abdel-Aziz instructed Ms. Rosario that the managers' instructions were incorrect, and that paperwork filled out when drivers were not physically present were violations of company policy, and was stealing from the Company or a crime.

17.     Mr. Rodriguez and Ms. Abdel-Aziz warned Ms. Rosario that if she did falsify records again, she would be written up or disciplined by Penske.  They specifically told her that she was not to do oil samples anymore.  Mr. Rodriguez threatened to remove her access.

18.      When Ms. Rosario advised that she was not aware that she had falsified records, but was only following Mr. Pazella's instruction, she was corrected and provided instruction on the legal way to fill out the paperwork.

19.     Ms. Abdel-Aziz also told Ms. Rosario that it was unlawful to put time on trucks to avoid oil sampling, and there would be legal repercussions to the company.

20.     Ms. Rosario advised that she had overheard Mr. Pazella, James Salerno "Jimmy" having discussions and talking about falsifying "particulate matter", putting in time, but doing so over the headset.

21.     Because Penske took the time to provide instruction, Ms. Rosario felt that she understood the policy, and what she had been doing was wrong.

22.     This investigation scared Ms. Rosario, and she was sure to follow the process that the investigators outlined for her not to fill out the paperwork as instructed by her managers.

23.     When Ms. Rosario went back to the job, she observed the falsifying particular matter and avoidance of oil sampling continued, Ms. Rosario did not engage in any such activity.

24.     Ms. Rosario, not wanting to lose her job, refused to participate, complained of these illegal instructions requiring her to falsify records, commit theft of services, and fraudulently submit time invoices for work never performed, and avoiding oil sampling regulations.

25.     Ms. Rosario reported continued illegal conduct from Mr. Pazella and others to Ms. Abdel-Aziz.

26.     When the illegal conduct continued, and there was no response from Ms. Abdel-Aziz, on December 23, 2024, at 6:06 p.m. Ms. Rosario escalated her complaints to the Penske ethics hotline.

27.     Shortly after her call to the Ethic's hotline, Ms. Rosario received an email from Larry Pontrelli, who introduced himself as the "Head of the New York District."

28.     Ms. Rosario explained to Mr. Pontrelli in relative detail all the fraud that was being committed by Ms. Pazella, and also the threats against her and her employment.

29.     Ms. Rosario continued to work but would periodically check in with Mr. Rodriguez to discuss her observations and the continued falsifying records, and oil sampling issues.

30.     Mr. Pontrelli contacted Plaintiff Rosario on two occasions in his continued investigation, and advised Ms. Rosario that he had spoken to others including Alexander and Mr. Pazella.

**31.**     After making this complaint and drawing attention to the unethical and illegal conduct of Mr. Pazella, Plaintiff Rosario was terminated on February 18, 2025.

## NJ LAW AGAINST DISCRIMINATION - DISABILITY

32.     Moreover, during her employment, Ms. Rosario was also discriminated against because of her disability and need for a reasonable medical accommodation.

33.     During all times relevant, and as of this date, Plaintiff Rosario suffers from fainting spells/spasms, but has not been diagnosed due to the loss of her health insurance.

34.     In June 2024 Ms. Rosario passed out.  She went to Urgent Care in Linden, NJ.  They gave Ms. Rosario a doctor's note stating that she needed the next day off.  Penske told her that she had no sick days but she took the day off anyway.

35.     As early as October 14, 2024 Ms. Rosario spoke to Baron Rodriguez to get an accommodation to get time off to go to her doctor's appointments.  She asked to come in early or stay late. Mr. Rodriguez told her that she used all of her sick days so even if she had a doctor's note, she would still accumulate points. A doctor's note does not matter if you have no sick time. He also told Ms. Rosario that she would have to speak to Mr. Salerno.  Mr. Rodriguez thew away the doctor's note Ms. Rosario gave him.

36.     Due to her disability, Ms. Rosario would experience random, unplanned yet infrequent bouts, and when those health issues would arise, she was limited in her daily functions due to passing out/fainting spells.

37.     Ms. Rosario's work responsibilities included handling matters in the service department such as answering phones, emails, scheduling service appointments, contacting customers when trucks were complete, invoices - issue digital payments.

38.     When her condition would flare up, Ms. Rosario would speak to Mr. Rodriguez who had told her to "take it easy and just stay are your desk until you feel better."

39.     Due to Ms. Rosario's disability, a brief but reasonable accommodation was necessary, as agreed for her to be able to perform the essential functions of her job.

40.     Ms. Rosario worked around any appointments so not to inconvenience the company, and Ms. Rosario spoke to Mr. Rodriguez, also giving him her doctor's notes.

41.     Despite her time out of work being for a medical condition, and having medical leave granted (intermittent), and requesting a reasonable medical accommodation, Ms. Rosario was retaliated against and punished when Mr. Rodriguez told her that if she did not have "sick time" banked, she would receive disciplinary points for being out.

42.     As part of her accommodation, Ms. Rosario had also spoken to her manager James "Jimmy" Salerno, and they had a verbal agreement regarding coming in late and leaving early for 1 or 2 days one particular week.

43.     Instead of keeping their word, Penske penalized Ms. Rosario for coming in late and leaving early for 1 or 2 days during that one particular week. Ms. Rosario then tried to keep all communication through email, as to keep a record.

44.     More particular, Mr. Salerno penalized Ms. Rosario by giving her written and verbal warnings, and issuing points.

45.     The continued harassment, singling her out and setting her up for failure continued.

46.     Ms. Rosario was constantly made to feel inferior due to her disability, specifically by Mr. Salerno, Plaintiff Rosario's immediate supervisor, who verbally harassed Ms. Rosario.

47.     Mr. Salerno would harass Ms. Rosario due to her medical condition and random days absent from work.  When she would return, and was working, Mr. Salerno would single her out, and in front of others, curse at her, and demean her by telling her that she was not doing her job or making enough calls.

48.     For example, despite working at the company for over 6 months, and never being criticized for such work concerns, it was evident to Ms. Rosario that she was being harassed due to her medical condition.

49.     Another example, Chris Pazella would negatively discuss and demean Ms. Rosario's disability and accommodations when he called her "useless".

50.     Another example, Ms. Rosario was given excessively unreasonable amounts of work for which she was not trained, and then used her mistakes against her.

51.     Mr. Salerno stated in an email that he should shove "technicians in feces like a dog to learn how to do things properly," clearly depicting a threatening, violent and hostile work environment.  Ms. Rosario felt intimidated.

52.     On November 14, 2025 Ms. Rosario went to the ER at JFK Medical Center due to her medical condition.  She did receive a back to work note be did not bother giving it to Mr. Rodriguez as he said doctor's notes do not matter.

53.     On or about, November 29, 2024 Ms. Rosario fainted in the bathroom at work, and Mr. Salerno found her lying on the floor.

54.     As a result, Mr. Salerno asked if she needed an ambulance, and that she should go home to manage her medical condition.  Since she was previously told notes do not matter because she had no sick days left, Ms. Rosario did not go to the doctor to get a note.

55.     A colleague, Carmine Ciano helped Ms. Rosario, and took her home.

56.     After recovering at home, Ms. Rosario returned to work the next day.

57.     A few days later, on December 5, 2024, Mr. Salerno called Ms. Rosario to ask what had happened to her, referencing her fainting spell and fall.

58.     A meeting was held. In this meeting were district manager Richard Schubert, Mr. Rodriguez and Mr. Salerno.

59.     Ms. Rosario explained to Mr. Salerno that she had been given a warning for leaving early after fainting.

60.     Mr. Rodriguez told Ms. Rosario that her issue passing out and going home was not reported to them by Service Manager James Salerno.

61.     Mr. Salerno was supposed to report the incident and advise Mr. Rodriguez who is the Branch Manager, but Mr. Salerno never reported the incident.

62.     Mr. Rodriguez asked Ms. Rosario what she wanted to do moving forward regarding leaving early and coming in late for appointments.  Again Ms. Rosario requested that she could make up the time by either coming in early or staying late.

63.     During Ms. Rosario's discussions with Mr. Rodriguez, it was agreed that Ms. Rosario would let him know what days she needed off for appointments and proceed through "proper Penske channels".

64.     On or about December 5, 2024, Ms. Rosario received a call Ms. Abdel-Aziz, who advised Ms. Rosario that "I am busy," but stated that she deserved "points" because they were "more than accommodating".Ms. Abdel-Aziz was referring to how Ms. Rosario did not get any points for missing a day of work in June after she passed out.

65.     Ms. Rosario, in response, emailed Ms. Abdel-Aziz to inquire into the company's policy on taking sick leave if she was ill at work.

66.     Later that date, Ms. Rosario received an email form Ms. Abdel-Aziz telling Ms. Rosario that company policy on sick leave was up to the particular branch, and "points" were left to the branch's discretion.

67.     Ms. Rosario spoke to Ms. Abdel-Aziz who told her that she should take a leave of absence and apply for FMLA leave.  Knowing she had not worked at the company long enough, Ms. Rosario believed she would be denied because she had not worked for Penski for a year yet.

68.     On December 11, 2024, Ms. Rosario was seen at the ER at JFK Medical Center for her medical condition. She did not give a doctor's note to Mr. Rodriguez as he threw away the last one she had given him, advising her that notes do not matter.

69.     Ms. Rosario was employed by Penske until January 20, 2025.

70.     Despite needing to take time off, since Ms. Rosario had used her allotted PTO, she was threatened that if she continued to take time off, even if more medical leave, she would accrue "points".

71.     On January 19, 2025, Ms. Rosario submitted her application with medical documentation request for FMLA and "ADA" leave due to the continued fainting and medical issues.

72.     Ms. Rosario started her company approved "ADA leave" on January 20, 2025.

73.     At this same time, Ms. Rosario was denied FMLA leave as she did not have adequate time at Penske to qualify.

74.     Between January 20, 2025 and February 12, 2025, Ms. Rosario was constantly undergoing medical testing and evaluation for fainting spells/spasms with Dr. Arshad.

75.     On or about February 11, 2025 Ms. Rosario received correspondence from FMLA notifying her that she had been approved for FMLA leave, which was to commence on April 30, 2025 and run through January 19, 2026.

76.     While on medical leave, and on approved FMLA and ADA leave, Ms. Rosario was terminated from Penske on February 18, 2025.

77.     Moreover, after her termination from Penske, the company intentionally provided false information to the State of New Jersey, Department of Unemployment wrongfully claiming that she violated "company rules" and therefore was disqualified from benefits.

## COUNT I

### *New Jersey Conscientious Employee Protection Act –   N.J.S.A: § 34:19-1 – CEPA*

78.    Ms. Rosario hereby repeats and realleges each of the above-mentioned allegations in paragraphs 1 through 77 as if fully set forth herein.

79.    Ms. Rosario engaged in protected conduct as set forth in the New Jersey Conscientious Employee Protection Act., N.J.S.A.  §34-19-1, et seq., in that she objected to, threatened to disclose and/or refused to participate in conduct which she reasonably believed was (1) in violation of a law or regulation promulgated under law.

80.    Ms. Rosario reported, objected, complained and refused to participate falsifying records, commit theft of services, fraudulently submit time invoices for work never performed, and avoiding oil sampling regulations, for example, but not limited to:

1.   Theft of Service, N.J.S.A. §2C:20-8;

2.   Falsifying Records, N.J.S.A. §2C:21-4;

3.   Evading Oil Sampling, N.J.A.C. §7:26E

81.    By doing so, Ms. Rosario lodged several good faith and reasonable complaints to Manager Baron Rodriguez and Penske Human Resources Jasmin Abdel-Aziz, Penske ethics hotline, and Larry Pontrelli that the company employees were violating Federal and State law, as outlined above.

82.    Moreover, it was well known that Ms. Rosario had made complaints to Penske Manager Baron Rodriguez and Human Resources Jasmin Abdel-Aziz, the Penske ethics hotline, and Larry Pontrelli of the unlawful demands made of her by Mr. Pazella, those continued after as outlined above,  many regarding violations of Federal and State law, and was terminated effective February 18, 2025 due to her complaints.

83.     As a result of Ms. Rosario's complaints of illegal conduct by the company's Mr. Pazella, Ms. Rosario was terminated from Penske effective February 18, 2025.

84.     Defendant's conduct and actions were malicious and/or undertaken with wanton and willful disregard of and for Plaintiff Rosario and her rights and legal obligations.

85.     As a result of the illegal and continuing course of conduct by Defendant described herein, Ms. Rosario has suffered economic and non-economic/emotional distress damages, resulting in loss of compensation, loss of earning power, loss of self-esteem, loss of standing in the community and is incurring legal expenses and other expenses as a result of Defendant's actions.

**WHEREFORE**, Ms. Rosario demands judgment against Defendant for Damages including: Front pay and back pay; Compensatory, Liquidated, Consequential, Ancillary and Punitive damages; Damages for emotional distress, loss of reputation and other personal injury: Payment or reimbursement of all fringe benefits; Pre- and post- judgement interest: enhancement for gross tax consequences; Reasonable costs and Attorney's fees under common law and statute: Costs of suit and any other relief this Court deems just.

## COUNT II

### *Common Law Wrongful Discharge -*
### *Pierce v. Ortho Pharmaceutical, 84 N.J. 58 (1980)*

86.     Plaintiff repeats and reasserts Paragraphs 1 through 85, and all allegations, as if full set forth at length herein.

87.     Defendant's discharge of Ms. Rosario violated the clear mandate of public policy of terminating an employee for objecting to or refusing to participate in illegal conduct such as when he objected to Defendant's requirement that she -- and others -- violate falsifying records, commit theft of services, fraudulently submit time invoices for work never performed, and

avoiding oil sampling regulations, thereby violating a clear mandate of public Policy, for example, but not limited to:

1. Theft of Service, N.J.S.A. §2C:20-8;

2. Falsifying Records, N.J.S.A. §2C:21-4;

3. Evading Oil Sampling, N.J.A.C. §7:26E

88.  Ms. Rosario objected to and complained verbally on numerous occasions to Penske Manager Baron Rodriguez and Human Resources Jasmin Abdel-Aziz, the Penske ethics hotline and Larry Pontrelli.

89.  The above-described actions of Defendant constitute a wrongful discharge of Ms. Rosario's employment effective February 18, 2025.

90.  As a result of the illegal and continuing course of conduct by Defendant described herein, Ms. Rosario has suffered economic and non-economic/emotional distress damages, resulting in loss of compensation, loss of earning power, loss of self-esteem, loss of standing in the community and is incurring legal expenses and other expenses as a result of Defendant's actions.

**WHEREFORE**, Ms. Rosario demands judgment against Defendants, jointly, severally and alternatively, for Damages including: Front pay and back pay; Compensatory, Liquidated, Consequential, Ancillary and Punitive damages; Damages for emotional distress, loss of reputation and other personal injury: Payment or reimbursement of all fringe benefits; Pre- and post-judgement interest: enhancement for gross tax consequences; Reasonable costs and Attorney's fees under common law and statute**:** Costs of suit and any other relief this Court deems just.

## COUNT III

### *New Jersey Law Against Discrimination (N.J.S.A. § 10:5-1 et seq.*
### *– Disability /Illegal Treatment Due to Disability*

91.     Plaintiff hereby repeats and realleges each of the above-mentioned allegations in paragraphs 1 through 90 as if fully set forth herein.

92.     Defendant treated Ms. Rosario in a discriminatory manner, creating a hostile work environment due to her disability.

93.     Ms. Rosario falls within the protected class of employees pursuant to N.J.S.A. §10:5-1 et seq, more particularly, N.J.S.A. § 10:5-4.1, et seq., as she suffered from a disability that temporarily limited her ability to perform his job without a reasonable accommodation.

94.     During all times relevant to this cause of action, Defendant Penske delegated its decision making to Manager Baron Rodriguez, Pensky Human Resources Jasmin Abdel-Aziz, and are defined as "employer" as defined by the LAD, N.J.S.A. §10:5-5(a), (c) and (e).

95.     During all times relevant to this cause of action, Ms. Rosario is a "person" and "employee" as those terms are defined by the LAD, N.J.S.A. §10:5-5(a) and (f).

96.     During all times relevant to this cause of action, Ms. Rosario suffered from a "disability" as defined by the LAD, N.J.S.A. §10:5-5(q).

97.     Defendant Penske had delegated authority, and in doing so Penske Manager Baron Rodriguez and Human Resources Jasmin Abdel-Aziz Supervisors Chris Pazella and James Salerno treated Ms. Rosario in a discriminatory manner due to Ms. Rosario's disability, medical condition, and leave of absence and medical accommodation requests, when she singled out, harassed and mistreated compared to others were where not disabled.

98.     Defendant Penske, by and through its employees and supervisors, were collectively aware that Ms. Rosario suffered from a medical condition, resulting in a disability requiring an accommodation when it approved Plaintiff for company "ADA leave" and also FMLA leave.

99.     Although Defendant knew or should have known of the discrimination suffered, Defendant failed to take any corrective measures to stop or prevent the discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:15-1, et seq.

100.    These illegal actions were committed against Ms. Rosario and the conduct complained of would not have occurred but for Plaintiff's disability.

101.    As a result of the illegal and continuing course of conduct by Defendant described herein, Ms. Rosario has suffered economic and non-economic/emotional distress damages, resulting in loss of compensation, loss of earning power, loss of self-esteem, loss of standing in the community and is incurring legal expenses and other expenses as a result of Defendant's actions.

102.    The actions taken by Defendant were calculated to harm Ms. Rosario, and Defendant was aware of its conduct is of the type to cause harm to Plaintiff, and as such, Ms. Rosario is entitled to an award of punitive damages.

103.    Defendant has engaged in behavior that violates the New Jersey Law Against Discrimination, N.J.S.A. §10:15-1, et seq. and have thereby irreparably injured Plaintiff.

**WHEREFORE**, Ms. Rosario demands judgment against Defendants, jointly, severally and alternatively, for Damages including: Front pay and back pay; Compensatory, Liquidated, Consequential, Ancillary and Punitive damages; Damages for emotional distress, loss of reputation and other personal injury: Payment or reimbursement of all fringe benefits; Pre- and post-

judgement interest: enhancement for gross tax consequences; Reasonable costs and Attorney's fees under common law and statute: Costs of suit and any other relief this Court deems just.

**<u>COUNT IV</u>**

*New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et seq. –*
*Failure to Accommodate Disability*

104.    Plaintiff hereby repeats and realleges each of the above-mentioned allegations in paragraphs 1 through 103 as if fully set forth herein.

105.    Defendant treated Ms. Rosario in a discriminatory manner, failed to engage in the interactive process and/or provide a reasonable accommodation due to Plaintiff's disability.

106.    Ms. Rosario falls within the protected class of employees pursuant to N.J.S.A. §10:5-1 et seq, more particularly, N.J.S.A. § 10:5-4.1, et seq., as she suffered from a disability that temporarily limited his ability to perform her job without a reasonable accommodation.

107.    During all times relevant to this cause of action, Defendant Penske delegated its decision making to Penske Manager Baron Rodriguez, Human Resources Jasmin Abdel-Aziz, and are defined as "employer" as defined by the LAD, N.J.S.A. §10:5-5(a), (c) and (e).

108.    During all times relevant to this cause of action, Ms. Rosario is a "person" and "employee" as those terms are defined by the LAD, N.J.S.A. §10:5-5(a) and (f).

109.    During all times relevant to this cause of action, Ms. Rosario suffered from a "disability" as defined by the LAD, N.J.S.A. §10:5-5(q).

110.    Defendant Penske had delegated authority, and in doing so Penske Manager Baron Rodriguez and Human Resources Jasmin Abdel-Aziz Supervisors Chris Pazella and James Salerno treated Plaintiff Rosario in a discriminatory manner due to Plaintiff's disability, medical condition, and leave of absence and medical accommodation requests, when she singled out, harassed and mistreated compared to others were where not disabled.

111.    Despite Plaintiff's need for medical accommodation(s), Defendant terminated her employment in lieu of allowing Plaintiff those reasonable accommodations.

112.    Defendant is unable to articulate an undue hardship for its refusal to engage in the interactive process and/or accommodate Ms. Rosario, but instead terminating her employment.

113.    At all times, Defendant and its employees and manager acted within the scope of an employer when they denied and refused to accommodate Plaintiff's medical leave of absence.

114.    These illegal actions were committed against Plaintiff and the conduct complained of would not have occurred but for Plaintiff's need for a reasonable accommodation due to her disability.

115.    As a result of the illegal and continuing course of conduct by Defendant described herein, Ms. Rosario has suffered economic and non-economic/emotional distress damages, resulting in loss of compensation, loss of earning power, loss of self-esteem, loss of standing in the community and is incurring legal expenses and other expenses as a result of Defendant's actions.

116.    The actions taken by Defendants were calculated to harm Ms. Rosario, and Defendant, and its employees and managers, were aware of that their conduct is of the type to cause harm to Ms. Rosario, and as such, Plaintiff is entitled to an award of punitive damages.

117.    Defendant has engaged in behavior that violates the New Jersey Law Against Discrimination, N.J.S.A. §10:15-1, et seq. and have thereby irreparably injured Plaintiff.

**WHEREFORE**, Ms. Rosario demands judgment against Defendants, jointly, severally and alternatively, for Damages including: Front pay and back pay; Compensatory, Liquidated, Consequential, Ancillary and Punitive damages; Damages for emotional distress, loss of reputation and other personal injury: Payment or reimbursement of all fringe benefits; Pre- and post-

judgement interest: enhancement for gross tax consequences; Reasonable costs and Attorney's fees under common law and statute**:** Costs of suit and any other relief this Court deems just.

## COUNT V

### *New Jersey Law Against Discrimination N.J.S.A. 10:5-1 et seq.*
### *– Perceived Disability Discrimination*

118.    Plaintiff repeats and reasserts all allegations above as if fully set forth at in paragraphs 1 through 117 as if fully set forth herein.

119.    During all times relevant to this cause of action, Penske Manager Baron Rodriguez and Human Resources Jasmin Abdel-Aziz Supervisors Chris Pazella and James Salerno are defined as "employer" as defined by the LAD, N.J.S.A. §10:5-5(a), (c) and (e).

120.    During all times relevant to this cause of action, Ms. Rosario is a "person" and "employee" as those terms are defined by the LAD, N.J.S.A. §10:5-5(a) and (f).

121.    During all times relevant to this cause of action, Defendant believed that Ms. Rosario suffered from a disability that was not existent, greatly exaggerated or was yet diagnosed," as defined by the LAD, N.J.S.A. §10:5-5 (q).

122.    During all times relevant to this cause of action, Defendant Penske authorized and acquiesced to Penske Manager Baron Rodriguez and Human Resources Jasmin Abdel-Aziz Supervisors Chris Pazella and James Salerno's conduct, allowing these employees to illegal treat Ms. Rosario due to a perceived disability.

123.    Defendant Penske, in concert with Penske Manager Baron Rodriguez and Human Resources Jasmin Abdel-Aziz Supervisors Chris Pazella and James Salerno, treated Ms. Rosario in a discriminatory manner due to what Defendant perceived as a disability that limited her ability to perform her job, but also because of future need to medical treatment and medical leave, creating a false undue hardship upon the company, therefore resulting in Plaintiff's termination.

124.     Due to the perceived continued disability, or prospective ongoing disability, Plaintiff was terminated.

125.     Although the Defendant knew or should have known of the discrimination suffered, Defendant failed to take any corrective measures to stop or prevent the discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:15-1, et seq.

126.     These illegal actions were committed against Plaintiff and the conduct complained of would not have occurred but for Defendants perception of Plaintiff's disability.

127.     As a result of the illegal and continuing course of conduct by Defendant described herein, Ms. Rosario has suffered economic and non-economic/emotional distress damages, resulting in loss of compensation, loss of earning power, loss of self-esteem, loss of standing in the community and is incurring legal expenses and other expenses as a result of Defendant's actions.

128.     The actions taken by defendants were calculated to harm Ms. Rosario, and Defendant, through its employees and managers, were aware of that their conduct is of the type to cause harm to Ms. Rosario, and as such, Plaintiff is entitled to an award of punitive damages.

129.     Defendant has engaged in behavior that violates the New Jersey Law Against Discrimination, N.J.S.A. §10:15-1, et seq. and have thereby irreparably injured Plaintiff.

**WHEREFORE**, Ms. Rosario demands judgment against Defendants, jointly, severally and alternatively, for Damages including: Front pay and back pay; Compensatory, Liquidated, Consequential, Ancillary and Punitive damages; Damages for emotional distress, loss of reputation and other personal injury: Payment or reimbursement of all fringe benefits; Pre- and post-judgement interest: enhancement for gross tax consequences; Reasonable costs and Attorney's fees under common law and statute**:** Costs of suit and any other relief this Court deems just.

## COUNT VI

### *("Unlawful Interference With Rights Protected Under The FMLA")*
### *(Section 105 of the FMLA and section 825.220 of the FMLA )*

130.    Plaintiff repeats and realleges each and every statement as set forth in Paragraphs 1 through 129 above, as if fully set forth herein.

131.    Due to her disability, on January 19, 2025 Plaintiff Rosario applied for FMLA.

132.    On February 11, 2025 Defendant Penske approved Plaintiff Rosario for FMLA Leave starting April 30, 2025.

133.    Effective February 11, 2025 because of her application for FMLA leave, and anticipated 12 weeks away from work, Defendant Penske prematurely terminated her employment.

134.    Defendant Penske was a qualified employer.

135.    Defendant engaged in unlawful conduct and violated Section 105 and Section 825.220 of the FMLA when it interfered, discouraged and restrained Ms. Rosario's rights, pursuant to the FMLA, 29 U.C. §2615(a)(l).

136.    Clearly interfering, discouraging and restraining, Plaintiff's FMLA rights by wrongfully terminating her employment prior to her FMLA leave date of April 30, 2025.

137.    Defendant clearly interfered, discouraged and restrained Plaintiff's FMLA protected rights in violation of Section 105 and Section 825.220 of the FMLA to when they required him to continue to work while on leave, demanded that she return from FMLA leave, and then punished her for not doing so.

**WHEREFORE**, Ms. Rosario demands judgment against Defendants, jointly, severally and alternatively, for Damages including: Front pay and back pay; Compensatory, Liquidated, Consequential, Ancillary and Punitive damages; Damages for emotional distress, loss of reputation

and other personal injury: Payment or reimbursement of all fringe benefits; Pre- and post-judgement interest: enhancement for gross tax consequences; Reasonable costs and Attorney's fees under common law and statute**:** Costs of suit and any other relief this Court deems just.

## COUNT VII

### *(Retaliation - Rights Protected Under The FMLA")*
### *("Retaliation for Exercise of Rights Protected Under The FMLA")*

138.    Plaintiff repeats and realleges each and every statement as set forth in Paragraphs 1 through 137 above, as if fully set forth herein.

139.    Due to Plaintiff Rosario disability, on January 19, 2025 Ms. Rosario applied for FMLA.

140.    On February 11, 2025 Defendant Penske approved Plaintiff Rosario for FMLA Leave starting April 30, 2025.

141.    Effective February 11, 2025 because of her application for FMLA leave, and anticipated 12 weeks away from work, Defendant Penske prematurely terminated her employment.

142.    Defendant Penske was a qualified employer.

143.    Defendant Penske retaliated against Ms. Rosario for exercising statutory rights and opposing practices made unlawful by the FMLA, 29 U.S.C. § 2615(a)(1) and (2).

144.    Moreover, Defendant Penske violated the FMLA as it prohibits interfering with, restraining, or denying an employee's exercise of or attempt to exercise any FMLA right. See 29 U.S.C. § 2615(a)(1); 29 CFR § 825.220(a)(1).

145.    Moreover, Defendant Penske violated the FMLA as the law prohibits employers from discharging or in any other way discriminating against any person, whether or not an employee, for opposing or complaining about any unlawful practice under the FMLA. See 29 U.S.C. § 2615(a)(2); 29 CFR § 825.220(a)(2).

**WHEREFORE**, Plaintiff demands that a judgment be entered against Defendant awarding i) compensatory Damages for loss of wages, back pay and future pay; ii) fringe benefits; iii) reasonable attorney's fees and expenses; iv) Pre and Post Judgment Interest, and v) such other equitable relief as this Court deems just and proper.

## COUNT VIII

### *(Post-Termination Retaliation – Tortious Interference)*

146.    Plaintiff repeats and realleges each of the above-mentioned allegations in paragraphs 1though 145 as if fully set forth herein.

147.    Defendant Penske retaliated against Ms. Rosario after Plaintiff's employment with Defendant had been terminated.

148.    Defendant, and its employees and managers, knowingly made false statements to the New Jersey Department of Unemployment Department, preventing her from obtaining unemployment insurance benefits.

149.    As outlined above, in the above Paragraphs, Defendant tortiously interfered with her economic rights under the NJ Unemployment laws in violation of N.J.S.A. § 43:21-16, and falsely stated that Plaintiff committed misconduct.

150.    Following these events, Ms. Rosario had eligibility issues to receive her State of New Jersey Unemployment benefits, because of the false and harmful statements from the Defendant company employees.

151.    Defendant's conduct and actions were malicious and/or undertaken with a wanton and willful disregard of Plaintiff.

152.    As a result of the illegal and continuing course of conduct by Defendant described herein, Ms. Rosario has suffered economic and non-economic/emotional distress damages,

resulting in loss of compensation, loss of earning power, loss of self-esteem, loss of standing in the community and is incurring legal expenses and other expenses as a result of Defendant's actions.

153.    Defendant engaged in, participated in, condoned, ratified, perpetuated and/or aided and abetted the aforesaid violations.

**WHEREFORE**, Plaintiff demands judgment against Defendant for Damages including: Compensatory damages, Payment and/or reimbursement of all loss of benefits; reasonable Attorney's fees, costs and interest under common law and statute: Costs of suit and any other relief this Court deems just.

## COUNT IX

### *(John Does & ABC Entities)*

154.    Plaintiff hereby repeats and realleges each of the above-mentioned allegations in paragraphs 1 through 153 as if fully set forth herein.

155.    Although Ms. Rosario believes that the acts complained of were performed or caused by the named Defendants, the Plaintiff cannot be certain that the named Defendants are the only person(s) or entity(ies) liable for the acts complained of as set forth herein. Therefore, the Plaintiff has named John Does 1 -10, fictitious persons and/or ABC entities as Defendant(s) to this action.

156.    As such, the terms "Defendant" or "Defendants" as used in all of the above Counts and paragraphs should therefore be defined and read as "Defendant(s) and/or John Doe(s)".

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly, severally and alternatively, for Damages including: Front pay and back pay; Compensatory, Liquidated, Consequential, Ancillary and Punitive damages; Damages for emotional distress, loss of reputation

and other personal injury: Payment or reimbursement of all fringe benefits; Pre- and post-judgement interest: enhancement for gross tax consequences; Reasonable costs and Attorney's fees under common law and statute**:** Costs of suit and any other relief this Court deems just.

RESPECTFULLY SUBMITTED,

*MARK | LAVIGNE, LLC*
Attorneys for Plaintiff Fatimah Rosario

*Jamison M. Mark*
_____
Dated:   December 8, 2025                          JAMISON M. MARK, ESQ.

## NOTICE OF TRIAL DESIGNATION

**PLEASE TAKE NOTICE** that pursuant to Rule 4:25-4 and 4:5-1(c) Jamison M. Mark, Esq. is hereby designated as trial counsel in the above captioned matter for MARK LAVIGNE, LLC, attorneys for Plaintiff Fatimah Rosario.

*MARK | LAVIGNE, LLC*
Attorneys for Plaintiff Fatimah Rosario

*Jamison M. Mark*
_____
Dated:  December 8, 2025                          JAMISON M. MARK, ESQ.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands, pursuant to R.4:35-1 trial by jury of all issues triable by jury

*MARK | LAVIGNE, LLC*
Attorneys for Plaintiff Fatimah Rosario

Dated: December 8, 2025

_____
JAMISON M. MARK, ESQ.

## DEMAND FOR INSURANCE INFORMATION

Pursuant to New Jersey Court Rule 4:10-2(b), demand is made that Defendants' disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including but not limited to, any and all declaration sheets. This demand shall include and cover not only primary coverage but also any and all EPLI, excess, homeowners, and umbrella policies.

*MARK | LAVIGNE, LLC*
Attorneys for Plaintiff Fatimah Rosario

Dated: December 8, 2025

_____
JAMISON M. MARK, ESQ.

## DEMAND TO PRESERVE EVIDENCE

Defendant is hereby directed and demanded to preserve all physical and electronic information pertaining in any way to the subject matter of this litigation, Plaintiff's cause of action and or prayers for relief, as pertaining to any party, including but not limited to, electronic data storage, any footage, images, re-creations, e-data, cloud stored information, searchable data, emails, spreadsheets, files, memos, text messages and all and any online social or work related websites, entries on social networking sites, and any other information and or data in our documents or tangible evidence which may be relevant to any claim or defense in this litigation.

*MARK | LAVIGNE, LLC*
Attorneys for Plaintiff Fatimah Rosario

*Jamison M. Mark*
_____
Dated: December 8, 2025          JAMISON M. MARK, ESQ.

## CERTIFICATION

Pursuant to R. 4:5-1, I hereby certify that the matter in controversy is not the subject of other actions pending in any other court or pending arbitration proceeding.

I further certify that I have no knowledge of any contemplated pending arbitration proceeding regarding the subject matter of this action.

Pursuant to R. 4:28, I am not aware of any other parties who should be joined to this matter based upon the same transactional facts.

Pursuant to R. 1:38-7(b), I certified that the confidential and personal identifies have been redacted from this document now submitted to the Court, and will be redacted from all documents submitted in the future.

*MARK | LAVIGNE, LLC*
Attorneys for Plaintiff Fatimah Rosario

*Jamison M. Mark*
_____
Dated: December 8, 2025          JAMISON M. MARK, ESQ.

## DISCOVERY DEMANDS
## DEMAND FOR DOCUMENTS

**PLEASE TAKE NOTICE** the above-named Plaintiff, Fatimah Rosario demands that Defendants produce at the office of Plaintiff's attorneys, Mark | Lavigne, LLC 675 Morris Avenue, Suite 300, Springfield, New Jersey 07081 the documents requested herewith for inspection by their attorneys, or a duly authorized representative of one or more of them within the time required by Court Rules, and for such period thereafter during regular office hours as may be necessary to complete such inspection:

1. All documents which evidence, relate or refer to any and all employee manuals, personnel policies or rules and regulations of Defendant Penske Truck Rental in effect from January 1, 2020 to the present, including but not limited to:

   a.      Employee Manual;
   b.      Personnel procedures and practices;
   c.      Employee performance review;
   d.      Anti-discrimination Policy
   e.      ADA Policies;
   h.      FMLA Policies;
   i.      Termination of Employee Policies.

2. All documentation identifying 1(a)-(i) was provided to Plaintiff.

3. All documentation listed in 1(a)–(i) that was revised, please provide the initial documents, and then each version of the revised copy between January 1, 2020 to the present.

4. For each of the documents 1(a) – (i) listed above, the acknowledge of receipt page for Plaintiff, Manager Baron Rodriguez and Human Resources Jasmin Abdel-Aziz, Larry Pontrelli, Supervisors Chris Pazella and James Salerno

5. The complete personnel file or any file maintained by Defendant for Plaintiff.

6. The company's entire FMLA file for Plaintiff.

7. Any and all job descriptions held by Plaintiff

8. Any help wanted ads placed by Defendant from November 1, 2024 through present for any position held by Plaintiff.

9. Any and all application(s) and personnel file(s) for anyone hired into the same position held by Plaintiff at Defendant from October 1, 2024 to present

10. All documents related to any discipline, critique or concerns issued to Plaintiff during her employment with Defendant.

11. Any and all reports, memos or form of written communication, or emails internally between employees of Defendant in which Plaintiff's employment was discussed between October 1, 2025 through present.

12. Any and all reports, memos, emails, notes or form of written communication, including that with any 3rd Party, which identified the reason for Plaintiff's termination from Defendant.

13. Any and all documents, compensation agreements, pay stubs, checks, cash receipts, vouchers, memos, payroll documents, W2, 1099, commission statements, or otherwise related to Plaintiff's compensation and benefits while employed by Defendant.

14. Any and all documents, compensation agreements, pay stubs, checks, cash receipts, vouchers, memos, payroll documents, W2, 1099, commission statements, or otherwise related to Plaintiff's compensation and benefit for the person(s) who replaced Plaintiff as r at Defendant Penske.

15. Any emails messages from Manager Baron Rodriguez and Human Resources Jasmin Abdel-Aziz, Larry Pontrelli, Supervisors Chris Pazella and James Salerno created between March 1, 2023 and present in which any of the following terms are used relating to Plaintiff:
    a. Fatimah
    b. Medical leave
    c. FMLA

20. Any and all text messages sent between March 1, 2024 through present from Manager Baron Rodriguez and Human Resources Jasmin Abdel-Aziz, Larry Pontrelli, Supervisors Chris Pazella and James Salerno to anyone at Defendant Penske identifying, naming or referencing Plaintiff Fatimah Rosario.

21. Plaintiff's performance review(s).

22. Any and all communications that you have memorializing the reasons for Plaintiff's separation from the company.

23. All written disciplinary action(s) taken against Plaintiff.

24. All communications to and/or from The State of New Jersey Department of Labor relating to Fatimah Rosario.

*MARK | LAVIGNE, LLC*
Attorneys for Plaintiff Fatimah Rosario

*Jamison M. Mark*
_____
JAMISON M. MARK, ESQ.

Dated: December 8, 2025

## <u>NOTICE OF DEPOSITIONS</u>

Dear Sir/Madam:

**PLEASE TAKE NOTICE**, that pursuant to the provisions of <u>R</u>.1:9-2 and <u>Rule </u>4:14-2, the

undersigned attorney for Plaintiff **FATIMAH ROSARIO** hereby demands that you produce for

appearance for deposition at the Mark | Lavigne, LLC at 675 Morris Avenue, Suite 300, Springfield,

New Jersey 07081 as follows:

1.   April 14, 2025 at 10:00 a.m.: Chris Pazella
2.   April 16, 2025 at 10:00 a.m.: Baron Rodriguez
3.   April 16, 2025 at 1:00 p.m.: Jasmin Abdel-Aziz
4.   April 17, 2025 at 10:00 a.m.: Larry Pontrelli
5.   April 17, 2025 at 11:30 p.m.: James "Jimmy" Salerno
6.   April 17, 2025 at 1:30 p.m.: Alexander

*MARK | LAVIGNE, LLC*
Attorneys for Plaintiff Fatimah Rosario

*Jamison M. Mark*
_____
JAMISON M. MARK, ESQ.

Dated: December 8, 2025

**\*\*\*These depositions may be subject to AUDIO and VIDEO recording \*\***

# Civil Case Information Statement

## Case Details: MIDDLESEX | Civil Part Docket# L-008608-25

**Case Caption:** ROSARIO FATIMAH  VS PENSKE TRUCK RENTAL

**Case Initiation Date:** 12/08/2025

**Attorney Name:** JAMISON M MARK

**Firm Name:** MARK & LAVIGNE, LLC

**Address:** 675 MORRIS AVE STE 300
SPRINGFIELD NJ 07081

**Phone:** 9738456606

**Name of Party:** PLAINTIFF : Fatimah Rosario

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Fatimah Rosario?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
 **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
 **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

<u>12/08/2025</u>
Dated

<u>/s/ JAMISON M MARK</u>
Signed

MIDDLESEX VICINAGE CIVIL DIVISION
P O BOX 2633
56 PATERSON STREET
NEW BRUNSWICK    NJ 08903-2633

                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 645-4300
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   DECEMBER 08, 2025
                    RE:     ROSARIO FATIMAH  VS PENSKE TRUCK RENTAL
                    DOCKET: MID L -008608 25


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON PATRICK BRADSHAW

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     002
AT:  (732) 645-4300 EXT 88294.

      IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
      PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: JAMISON M. MARK
                              MARK & LAVIGNE, LLC
                              675 MORRIS AVE
                              STE 300
                              SPRINGFIELD       NJ 07081


ECOURTS

FATIMAH ROSARIO

**Plaintiff**

vs

PENSKE TRUCK RENTAL, ET AL

**Defendant**

20251209153345

Superior Court Of New Jersey

MIDDLESEX Venue

Docket Number: MID L 8608 25

**Person to be served** (Name and Address):
PENSKE TRUCK RENTAL
1540 LOWER RODE
LINDEN  NJ  07036
**By serving:** PENSKE TRUCK RENTAL

**Attorney:** JAMISON M. MARK, ESQ.

**Papers Served:** SUMMONS AND COMPLAINT, CIS, TRACK ASSIGNMENT
NOTICE, DEMANDS, CERTFICATION, NOTICE OF DEPOSITION

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.____

**Service Data:**     [X] Served Successfully          [ ] Not Served

Date/Time:     12/17/2025 10:51 AM     _____

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing
therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent,
registered agent, etc. (indicate name & official title at right)

Name of Person Served and relationship/title:

ATTICUS INGALLS

PERSON AUTHORIZED TO ACCEPT SERVICE

**Description of Person Accepting Service:**

SEX:M___  AGE:21-35   HEIGHT: 5'9"-6'0"____   WEIGHT: OVER 200 LBS.___   SKIN:WHITE_____   HAIR:BROWN____   OTHER:_____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on:          Date/Time: _____
                             Date/Time: _____
                             Date/Time: _____

Other:

**Served Data:**
Subscribed and Sworn to me this

17th day of December, 2025

Notary Signature _____

Rosemary Ramos              September 25th, 2028
Name of Notary              My Commission Expires

I, SAL COSSARI,
was at the time of service a competent adult, over the age of 18 and
not having direct interest in the litigation. I declare under penalty of
perjury that the foregoing is true and correct.



_____          12/17/2025
Signature of Process Server        Date

Name of Private Server: SAL COSSARI  Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) 672-1952